# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF DIANE RHODES, Deceased,
Maureen Richardson, Personal Representative;
MAUREEN RICHARDSON; ZENON RICHARDSON;
OTERA RICHARDSON; RAMSEY FORBES;
COREY RICHARDSON; AND THOMAS L. BROWNE;

      Plaintiffs,

vs.                                    No. CIV-03-0684 JB/LFG

TAOS COUNTY, NEW MEXICO; CHARLIE MARTINEZ,
individually and in his capacity as the Taos County Sheriff;
MARK SALAZAR, individually and in his capacity as the
former Taos County Animal Control Officer;

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came before the Court on the Defendants' Motion to Dismiss the Plaintiffs' Complaint With Prejudice. In their briefing, all parties presented evidence outside of the pleadings for the Court's review. During oral argument, counsel for both parties indicated to the Court that they were prepared to have the motion treated as a motion for summary judgment. See Transcript of Hearing, at 6, 24, 25 (August 20, 2003). Accordingly, the Court will consider the materials presented outside of the pleadings and rule on this motion as one for summary judgment. The motion raises three primary issues: (i) whether the Plaintiffs have demonstrated a genuine issue of material fact as to the elements of their § 1983 claim against Defendant Taos County ("County"); (ii) whether

1

the Individual Defendants, Taos County Sheriff Charlie Martinez ("Martinez") and former Taos County Animal Control Officer Mark Salazar ("Salazar"), enjoy qualified immunity from suit in this matter; and (iii) whether the Plaintiffs have shown a genuine issue of material fact regarding the claim against Martinez for negligent supervision of Salazar.

Regarding the claims against the County, the Court finds that the Plaintiffs have failed to establish any genuine issue of material fact with respect to the requirement that the County maintained a policy or custom that violated the decedent's[1] statutory or constitutional rights.  For this reason, the Court will dismiss the federal claim against the County.  Regarding the claims against the Individual Defendants, because the Court finds that Martinez and Salazar enjoy qualified immunity, the Court grants the motion for summary judgment as to the federal claims against them. Furthermore, the Court finds that the Plaintiffs have failed to raise any genuine issue of material fact with respect to their allegations against Martinez for his supervision of Salazar.  Therefore, the Court will also grant summary judgment as to this claim.  Having disposed of the claims that formed the basis for removal to federal court, the Court declines to exercise jurisdiction over the remaining state law claims and remands this action to state court for further proceedings.

## PROCEDURAL BACKGROUND

The Plaintiffs filed their original complaint on January 6, 2003 in the Eighth Judicial District Court for the District of New Mexico, County of Taos.  On June 5, 2003, the Plaintiffs filed an amended complaint entitled "Amended and Restated Complaint for Wrongful Death and for Civil Rights Violations."  Among other things, the Plaintiffs' Amended Complaint alleges that the Plaintiffs

---

[1] The surviving Plaintiffs do not allege that the Defendants violated any of their personal constitutional rights.  See Transcript of Hearing at 22-23.  Hence, the only constitutional claims at issue are those of the decedent, Diane Rhodes ("Rhodes").

are bringing claims under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.  See Plaintiffs' Amended Complaint ¶¶ 49, 50, at 6.  The Defendants removed this case to federal court on June 9, 2003.

The Plaintiffs' Amended Complaint sets forth four separate counts.  The Defendants read the complaint as setting forth claims against all Defendants for wrongful death and against the County for negligent supervision.  See Defendants' Brief in Support of Motion to Dismiss, at 1.  The Plaintiffs do not disagree with that characterization.  At oral argument, the Plaintiffs also agreed with the Defendants' characterization that the Plaintiffs' federal claims were limited to the following three: (i) a § 1983 claim against the County; (ii) a § 1983 claim against the Individual Defendants; and (iii) a § 1983 claim against Martinez for failure to supervise Salazar.

On June 23, 2003, the Defendants filed a motion to dismiss the Plaintiffs' Amended Complaint with prejudice.  The Plaintiffs served their response on July 21, 2003 and cited to matters outside the pleadings, attached affidavits, and submitted a newspaper article and an editorial for the Court's review.  In their response brief, the Plaintiffs requested that, if the Court found the motion to be well-taken, they be allowed the opportunity to amend their complaint.  See Plaintiffs' Response at 2.  The Defendants filed a reply brief on August 7, 2003, attaching an affidavit of their own, and asking the Court to treat their motion as one for summary judgment.

## SUMMARY JUDGMENT STANDARD

If the Court considers material outside the pleadings, it has converted the motion to dismiss into one for summary judgment and must dispose of the motion as provided in rule 56.  See Fed. R. Civ. P. 12(b).  The rule further provides that, if the Court does not elect to exclude matters outside the pleadings, all parties shall be given a reasonable opportunity to present all material that would be

pertinent to a motion for summary judgment. See id.  At oral argument, Plaintiffs counsel stated that

he believed he was converting the motion to dismiss into a motion for summary judgment by attaching

supporting materials to his response brief. See Transcript of Hearing at 24.  Both parties represented

that they were prepared for the Court to rule on the motion as one for summary judgment.  See id.

at 6, 24, 25.

The Court enjoys "broad discretion in determining whether or not to accept materials beyond

the pleadings." Lowe v. Town of Fairland, Oklahoma, 143 F.3d 1378, 1381 (10th Cir. 1998).  As

requested by the parties, the Court will treat the motion as one for summary judgment.  Accordingly,

the Court will also deny the Plaintiffs' request to amend their Amended Complaint.[2]

In deciding a motion for summary judgment, the Court must determine whether there exist

any genuinely disputed issues of material fact, and whether, viewing the record in the light most

favorable to the non-moving party, the movant is entitled to judgment as a matter of law. See Boling

v. Romer, 101 F.3d 1336, 1338 (10th Cir. 1996) (citations omitted).  There is no issue for trial unless

there is sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that

party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted).  It is the

Court's duty to perform the threshold inquiry whether there are any genuine factual issues that

properly only a finder of fact should resolve because they may reasonably  be resolved in favor of

either party. See id. at 250.  Summary judgment is appropriate if the non-moving party is unable to

set forth specific facts showing that there is a genuine issue for trial. See id.

---

[2] The Plaintiffs have amended their complaint once. While no discovery has occurred, the Plaintiffs
have not pointed to any evidence that they have now which could cure the problems with their complaint or with
their § 1983 claims. The Plaintiffs did not file a rule 56(f) affidavit.  If, at some point, the Plaintiffs uncover
evidence that they believe justifies a new pleading, they perhaps can renew their motion to amend in state court.

## FACTUAL RECORD

On January 9, 2002, Sampson, a mix breed dog/wolf owned by Kelly Richardson ("Richardson"), mauled and killed Rhodes when she attempted to break up a fight between Sampson and her own dog.  See Amended Complaint ¶¶ 10, 40, at 2, 5; Defendants' Brief at 2.  Richardson was Rhodes' son.  See Defendants' Brief at 2.  Richardson and Rhodes lived on adjacent properties. See id.  The Defendants contend that both Rhodes and Richardson were aware that Sampson was aggressive and could be dangerous because he was part wolf.  See id.  The Plaintiffs have offered no evidence to the Court to dispute this assertion.

Before Rhodes' death, Sampson had severely bitten several people, and both the Taos County Sheriff's Department and Taos County Animal Control Office had received calls concerning at least one of the attacks.  See Amended Complaint ¶¶ 12, 15, 22, 24, at 2, 3.  On August 18, 1999, Sampson attacked and bit a boy named Aaron Boswell.  See id. ¶ 12, at 2.  This bite required stitching of Aaron's wounds.  See id. ¶ 14, at 3.  The Plaintiffs concede that this incident was not reported to either the Taos County Sheriff's Department or to the Taos County Animal Control Office at the time that it occurred.  See Transcript of Hearing at 27.  The Plaintiffs do assert, however, that Salazar learned of the incident at a later date.  See Amended Complaint ¶ 29, at 4; Juan Madrid Affidavit ¶ 7, at 1.

On November 19, 1999, Sampson mauled and bit another boy, Christopher Madrid.  See Amended Complaint ¶ 15, at 3; Transcript of Hearing at 27.  Following the incident involving Christopher Madrid, Juan Madrid, Christopher's father, attempted to file a complaint with the Taos County Sheriff's Department. See Amended Complaint ¶ 21, at 3; Juan Madrid Affidavit ¶ 4, at 1. The dispatcher refused to take a report regarding the attack and referred Mr. Madrid to the Taos

5

County Animal Control Office.  See id. ¶¶ 22, 23, at 3; Juan Madrid Affidavit ¶ 5, at 1.

After receiving a message from Mr. Madrid, Salazar of the Taos County Animal Control Office contacted Mr. Madrid regarding the attack on Christopher Madrid and took Sampson from his owner to verify that the dog had a current rabies vaccination.  See Amended Complaint ¶¶ 25, 31, at 3, 4.  Upon receiving evidence that Sampson had a current rabies vaccination, Salazar returned the dog to its owner and informed Mr. Madrid that there was nothing else he could do.  See id. ¶ 38, at 5; Juan Madrid Affidavit ¶ 11, at 2.  At that point Mr. Madrid again contacted the Sheriff's Department to request that some action be taken and was refused.  See Juan Madrid Affidavit ¶ 12, at 2.

On November 23, 1999, a nurse from the hospital that treated Christopher Madrid called the Taos County Animal Control Office to report the dog bites sustained by the boy and the need for "appropriate management" of the case.  Id. ¶ 32, at 4.  The Plaintiffs' contend that Salazar and Martinez did not issue any citations or file any complaints regarding the attack by Sampson on Christopher Madrid.  See id. ¶ 39, at 5.  At oral argument, the Defendants denied this contention. See Transcript of Hearing at 41-42.  Neither party has presented evidence to the Court to establish whether such citations or complaints were ever issued or filed.

The Plaintiffs also presented evidence that a neighbor of Rhodes had contacted the Sheriff's Department and Animal Control Office to report dogs running at large or vicious dogs.  See Affidavit of Susan Embry ¶¶ 2, 3, 4.  To Ms. Embry's knowledge, no action was ever taken on these complaints.  See id.  Based on these allegations, the Plaintiffs contend that the Defendants had a duty under the applicable County ordinance to have Sampson destroyed, and that their failure to do so was the cause of the fatal attack on Diane Rhodes.  See Amended Complaint ¶ 40, at 5.

6

In support of their claims against the County for failure to adequately supervise and train Martinez and Salazar, as well as Martinez' failure to adequately supervise and train Salazar, the Plaintiffs allege that the Taos County Animal Control Office hired Salazar on or about November 19, 1999 and that he did not have any training for that position.  See id. ¶27, at 4.  They further contend that Salazar performed the investigation into the attack by Sampson on Christopher Madrid without knowledge or training as a law enforcement officer or supervision from anyone with knowledge or training as an animal control officer.  See id. ¶ 28, at 4; Affidavit of Juan Madrid ¶ 10, at 1.

## I.    ALL THREE OF THE PLAINTIFFS' FEDERAL CAUSES OF ACTION ARE DEPENDENT UPON A SHOWING THAT THE DEFENDANTS VIOLATED RHODES' CONSTITUTIONAL RIGHTS.

As the Plaintiffs concede, each of their three federal claims contains an element requiring them to establish that the Defendants violated Rhodes' federally protected constitutional rights.  See Transcript of Hearing at 30.  To state a claim under § 1983, the Plaintiffs must establish "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002).  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (citing Baker v. McCollan, 443 U.S. 137, 144, n. 3, (1979)).

In this case, the Plaintiffs allege that the Defendants violated Rhodes' civil rights to life and liberty pursuant to the Fourteenth Amendment to the United States Constitution.  See Amended Complaint ¶ 50, 53, at 6, 7.  Although the Amended Complaint does not specify whether they claim

a violation of Rhodes' substantive or procedural due process rights, Plaintiffs' counsel stated at oral argument that they rely on both theories.  See Transcript of Hearing at 28-29.  Because, however, the Court finds that the Plaintiffs do not raise any genuine issue of material fact in support of either claim, it will grant the motion for summary judgment on the federal claims against all Defendants.

A.    **THE DEFENDANTS DID NOT VIOLATE RHODES' SUBSTANTIVE DUE PROCESS RIGHTS.**

It is undisputed that a third party, Sampson -- not the Defendants -- mauled and killed Rhodes.  The Plaintiffs nevertheless seek to hold the Defendants liable for Rhodes' death.  Specifically, the Plaintiffs assert that the Defendants' failure to destroy Sampson, after he bit Christopher Madrid, led to Rhodes' death.  See Amended Complaint ¶40, at 5.

As the Plaintiffs readily concede, a state actor's purported failure to protect an individual from the actions of a third party do not constitute a constitutional violation.  See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 191 (1989); Transcript of Hearing at 30. The Defendants thus cannot, without more, be liable for the negligent or criminal acts of Kelly Richardson or his dog.  Hence, to the extent that the Plaintiffs in this case seek to hold the Defendants liable under § 1983 for the purported actions of a third party, the Defendants are entitled to judgment as a matter of law.

The Plaintiffs, however, argue that they seek not to hold the Defendants responsible for the acts and omissions of Richardson and of his dog, but seek to hold the Defendants responsible for their own acts or omissions.  To prevail on a substantive due process claim, the Plaintiffs must be able to establish that the Defendants had a duty to protect Rhodes against the violent conduct of third-party actors.  The Supreme Court has not found such a duty.  The language of the Due Process Clause forbids the State itself to deprive individuals of life, liberty, or property without "due process of law,"

8

but it cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.  See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. at 195.

In DeShaney, the Plaintiffs brought suit alleging that the Winnebago Department of Social Services failed to protect a young child from foreseeable physical violence from his father.  See id. The Supreme Court rejected the plaintiff's substantive due process claim, pointing out that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."  Id. at 195.  Generally, state actors may only be held liable under § 1983 for their own acts and not for the violent acts of third parties.  See id. at 197 ("As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.").

The Court of Appeals for the Tenth Circuit has recognized two exceptions to this general rule: (i) the "special relationship" exception; and (ii) the "danger creation" exception.  See Armijo v. Wagon Mound Pub. Schs., 159 F.3d 1253, 1260 (10th Cir.1998) (citing Liebson v. New Mexico Corrections Dep't, 73 F.3d 274, 276 (10th Cir.1996)).  Under the "special relationship" exception, liability may attach when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual.  See Liebson v. New Mexico Corrections Dep't, 73 F.3d at 276.  The "danger creation" exception provides that a state may also be liable for an individual's safety "if it created the danger that harmed the individual."  Id.

The Plaintiffs do not allege that a "special relationship" existed between the Defendants and Rhodes that would have imposed an affirmative duty upon them to protect her from an attack by Sampson.  See Transcript of Hearing at 29.  The Plaintiffs rely instead on the "danger creation"

exception and try to avoid the Supreme Court's decision in <u>DeShaney</u> by arguing that the Individual Defendants are liable for their own actions, not for the actions of Richardson, because they failed to follow proper procedure and do their jobs, and thereby created the danger that led to Rhodes' death. <u>See</u> Plaintiffs' Response at 7. Specifically, the Plaintiffs assert that the Defendants failed to destroy Sampson, which led to Rhodes' death.

The danger creation theory applies when the state creates a dangerous situation or renders citizens more vulnerable to danger. This state-created danger doctrine necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger. <u>See</u> <u>Uhlrig v. Harder</u>, 64 F.3d 567, 572 n.6 (10th Cir. 1995). In <u>Armijo v. Wagon Mound Public Schs.</u>, the Tenth Circuit delineated the contours of a "danger creation" cause of action. <u>See</u> 159 F.3d at 1262-63. To make out a proper "danger creation" claim, a plaintiff must demonstrate that (i) the plaintiff was a member of a limited and specifically definable group; (ii) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (iii) the risk was obvious or known; (iv) the defendants acted recklessly in conscious disregard of that risk; (v) such conduct, when viewed in total, is conscience shocking; and (vi) the charged state entity and the charged individual defendant actors created the danger or increased the plaintiff's vulnerability to the danger in some way. <u>See</u> <u>id.</u> The Tenth Circuit explained this sixth element by stating that, if the danger to the plaintiff existed before the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed. <u>See</u> <u>id.</u> The classic case of state actors creating a danger so as to give rise to §1983 liability is <u>Wood v. Ostrander</u>, 879 F.2d 583 (9th Cir. 1989). There, the police officers placed the plaintiff in danger by impounding her car and abandoning her in a high crime area at 2:30 a.m., thereby "distinguishing Wood from the

general public and triggering a duty of the police to afford her some measure of peace and safety." Id. at 589-90.

Many state activities have the potential for creating some danger.  Not all such activities, however, constitute "special" danger giving rise to § 1983 liability.  For the state to be liable under § 1983 for creating a special danger -- where a third party other than a state actor causes the complained of injury -- a plaintiff must allege a constitutionally cognizable danger.  See Uhlrig v. Harder, 64 F.3d at 572-73.  That is, the danger creation theory must ultimately rest on a claim predicated on reckless or intentionally injury-causing state action that "shocks the conscience."  Id.

In this case, Richardson's dog was the immediate cause of Rhodes' death.  The Plaintiffs do not present facts from which it can be reasonably inferred that the Defendants increased Rhodes' vulnerability to an attack by Sampson above the level which already existed.  With respect to the requirement that a plaintiff be a member of a limited and specifically definable group,  the Plaintiffs argue that Rhodes met this standard because she was a part of the group that lived in close physical proximity to Sampson.  See Transcript of Hearing, at 32.  This contention is insufficient.  The Defendants did not put Rhodes in that group; she chose to live next door to her son.  The Defendants' conduct did not single out Rhodes in any manner, but rather affected all citizens of the County equally.

Furthermore, the Plaintiffs do not show that the Defendants' conduct put Rhodes at substantial risk of serious, immediate, and proximate harm.  The Plaintiffs do not contend that the Defendants took any action with respect to the dog in question between November 19, 1999 and January 9, 2002, the day that Sampson attacked Rhodes.  Thus, it can hardly be said that any risk created by the Defendants was serious, immediate, and proximate.  While the Plaintiffs argue that the

11

risk in this case, based on Sampson's past history, was obvious or known, it cannot be reasonably inferred that the Defendants acted recklessly in conscious disregard of that risk.   Under the circumstances of this case, when viewed in total, the conduct of the Defendants does not reach a level that courts have been willing to find as conscience shocking.   "To satisfy this standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Livsey v. Salt Lake County, 275 F.3d 952, 957-958 (10th Cir. 2001).  The question whether conduct is sufficiently extreme to shock the conscience is a matter of law that can be determined by the Court on a motion for summary judgment.  See Martinez v. Uphoff, 265 F.3d 1130, 1135 (10th Cir. 2001) ("We agree with the conclusion of the trial court that, under the circumstances of this case, 'inaction in the face of known dangers or risks [was] not enough to satisfy the danger-creation theory's conscience shocking standard.'").

The Plaintiffs, in their response brief, cite to two cases from the United States Court of Appeals for the Third Circuit that they contend support their cause of action against the County. These cases, however, are of no assistance to the Plaintiffs.  The first case cited does not explicitly address the danger creation issue, but rather focuses on the scienter requirement under a § 1983 claim.  See Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720 (3rd Cir. 1989).  Even so, the case actually cuts against the Plaintiffs' claim because the Court of Appeals for the Third Circuit made an explicit distinction between the defendants that had allegedly tolerated or condoned the claimed constitutional violations and those that had not done so.  See id. at 731.  In this case, the Plaintiffs have not pointed to any facts that would raise an issue concerning the County's knowledge of any

12

alleged misconduct on the part of Martinez or Salazar.  Such failure to raise any genuine issue of material fact further undermines the Plaintiffs' claims.

The second case cited by the Plaintiffs is of similarly little assistance.  In that case, the Third Circuit refused to hold school officials liable for the sexual assault by students where there was no evidence that the school defendants created the plaintiffs' peril, increased their risks of harm, or acted to render them more vulnerable to the student defendants' assaults.  See D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1374 (3rd Cir. 1992).  The facts of this case are similar to those of the case before the Court, in that, while the defendants may not have taken steps to eliminate or reduce the existing danger posed by private actors, they did not create it.

The  Plaintiffs have failed to allege or demonstrate that the Defendants owed Rhodes any special duty to protect her against an attack by Sampson.  The Plaintiffs are therefore unable to create any genuine issue of material fact regarding their contention that the Defendants violated a substantive due process right of Rhodes.  Accordingly, the Plaintiffs' substantive due process claims against the Defendants fail, and the Court will grant summary judgment and dismiss these claims with prejudice.

**B.**     **THE DEFENDANTS DID NOT VIOLATE RHODES' PROCEDURAL DUE PROCESS RIGHTS.**

The Tenth Circuit has held that, when "regulatory language is so mandatory that it creates a right to rely on that language thereby creating an entitlement that could not be withdrawn without due process," such language can form the basis of a procedural due process claim.  Gonzales v. City of Castle Rock, 307 F.3d 1258, 1264 (10th Cir. 2002).  Such a claim is only available when use of the word "shall" in a statute mandates a specific substantive outcome, rather than merely referring

to required procedures.  See id., at 1265.  In Gonzales, the Tenth Circuit held that a state statute mandating that officers "shall use every reasonable means to enforce a restraining order" enabled the plaintiff to effectively allege a procedural due process claim when police officers refused to take any action to enforce a protective order against her ex-husband who had abducted her three daughters. See id. at 1264 - 1265.

The  Plaintiffs  have  failed  to  demonstrate  that  any  statutes  or  ordinances  mandated  the Defendants to destroy Sampson under the circumstances that existed before the attack on Rhodes. Section 2-2 of the Animal Control Ordinance provides that Animal Control Officers shall have the authority to issue citations for violations and investigate upon probable cause any alleged violation. This section does not assist the Plaintiffs, however, because it refers only to procedure, and not to a specifically mandated substantive outcome.  The Plaintiffs therefore are unable to raise any genuine issue of material fact in their attempt to establish that the Defendants violated Rhodes' procedural due process rights.  Accordingly, the Plaintiffs' claims against the Defendants under § 1983 fail, and the Court will grant summary judgment and dismiss these claims with prejudice.

## II.   THE § 1983 CLAIM AGAINST THE COUNTY ALSO FAILS FOR FAILURE TO SHOW THAT THERE WAS A POLICY OR CUSTOM.

The Plaintiffs have failed to demonstrate that there is a genuine issue of material fact whether the Defendants violated Rhodes' constitutional rights.[3]  The Plaintiffs § 1983 claim against the County

---

[3] Similarly, because the County did not violate a federally protected right of Rhodes, there is no causation.  Duty and causation are often interrelated concepts, and the analysis above regarding duty at least partially explains why, even if there were a duty or right, any violation would not have been the proximate cause of the harm.  Lack of proximate cause can form the basis of a grant of summary judgment when the plaintiffs attempt to hold a government official liable for the acts of a private party.  See Carl v. City of Overland Park, Kan., 65 F.3d 866, 872 (10th Cir. 1995).

thus fails.[4]  There is, however, at least one additional element that the Plaintiffs failed to show.

The Tenth Circuit has held that municipalities cannot be held liable under § 1983 unless actions pursuant to official municipal policy caused a constitutional tort.  See Wilson v. Meeks, 98 F.3d 1247, 1255 (10th Cir. 1996).  To warrant liability, a municipal policy must be a policy, statement, ordinance, regulation, or decision that the municipality's officers officially adopted and promulgated.  See Lankford v. City of Hobart, 73 F.3d 283, 286 (10th Cir. 1996).  Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.  See Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-404 (1997) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978).

To establish municipal liability, the plaintiff must show that the municipality's own conduct was deliberate.  See Brown, 520 U.S. 397, at 404.  The Supreme Court has refused to hold municipalities liable under a theory of respondeat superior.  See id. at 403.  The plaintiff must allege that the municipality itself or its officials were the moving force behind the alleged injury.  See id. at 404.  Where a plaintiff alleges that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, the Court should employ rigorous standards to ensure that the municipality is not held liable solely for the actions of its employees.  See id. at 398 (citing Canton v. Harris, 489 U.S. 378, 391-92 (1989)).  The plaintiff must also establish that the municipality took

_____

[4]Municipalities are "persons" under § 1983 and can therefore be sued for their constitutional torts.  See Monell v. New York City Dep't of Social Servs., 436 U.S. 658,690 (1978).  This principle extends to "other local government entities," such as counties.  Sauers v. Salt Lake County, 1 F.3d 1122, 1129 (1993).  Defendants' counsel, at oral argument, also confirmed that the County was a "person" for purposes of § 1983.  See Transcript of Hearing at 9.

action with the requisite degree of culpability and must show a direct causal link between the conduct or action of the municipality or official and the purported deprivation of federal rights.  See id.

Courts have held that, even in the absence of an official governmental policy, a municipality may be held liable if the unconstitutional practice is so permanent and well settled as to constitute a 'custom or usage' with the force of law." Lankford v. City of Hobart, 73 F.3d at 286 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 168 (1970)).  To establish a custom, however, the actions of the municipal employees must be "continuing, persistent and widespread." Gates v. Unified Sch. Dist. No. 449, 996 F.2d 1035, 1041 (10th Cir. 1993).   In addition, the plaintiff must show deliberate indifference to, or tacit approval of, such misconduct by policymaking officials after notice of such misconduct. See id.  Evidence that the municipality acted similarly against another person in addition to the claimant is necessary to demonstrate the existence of a custom.  See Randle v. City of Aurora, 69 F.3d 441, 447 (10th Cir. 1995).

In this case, the Plaintiffs have not raised a genuine issue of material fact with respect to their contention that the County had any policy or custom that violated Rhodes' constitutional rights or caused the Plaintiffs' alleged injuries.  The Plaintiffs present no evidence that the County had an actual policy of failing to enforce the governing statutes and ordinances.  Rather, the Plaintiffs contend that their evidence at least allows an inference that the County had a custom of not enforcing the applicable statutes and ordinances.  See Response at 4.

The Plaintiffs' evidence is essentially limited to a showing that the Taos County Sheriff's Department and the Taos County Animal Control Office may not have adequately investigated or pursued the incident involving the attack on Christopher Madrid.  See Complaint ¶¶38, 39, at 5; Transcript of Hearing at 35-36.  Such focus on a single incident is not enough to support their claim

under § 1983.  Moreover, the incident itself is not evidence of the Defendants' disregarding the law.
The Plaintiffs concede that the Taos County Animal Control Ordinance specifically grants the Sheriff
of Taos County the authority to delegate his responsibility for the administration of the ordinance to
a duly appointed Animal Control Officer.  See id. ¶ 34, at 4.  Thus, the Sheriff's Department did not
contravene the ordinance when it refused to take a report of the incident involving Christopher
Madrid and referred the boy's father to the Animal Control Office.  See id. ¶¶22, 23, at 3.  Also, the
Plaintiffs do not show that Martinez had notice or approved of any allegedly improper conduct on
the part of Salazar.  A custom on the part of the Animal Control Office cannot be shown by merely
alleging that Salazar failed to destroy Sampson following the attack on Christopher Madrid or issue
a citation to the dog's owner.

The Plaintiffs have failed to raise a genuine issue of material fact that the County had any
policy or custom that inflicted any injury upon Rhodes or any other individual.  The Plaintiffs' failure
to allege or demonstrate the existence of similar instances of constitutional deprivation to other
individuals undermines their claim under §1983.  The allegations contained in the Amended
Complaint are insufficient to establish a continuing, persistent and widespread custom of failing to
meaningfully respond to complaints.  As such, the Defendants are entitled to judgment as a matter
of law on the claim against the County under §1983.  The Court therefore will grant the County's
motion for summary judgment and dismiss the §1983 claim against it with prejudice.

## III.   THE PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1983 FAIL AGAINST THE INDIVIDUAL DEFENDANTS BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY.

Government officials performing discretionary functions generally are shielded from liability
for civil damages if their conduct does not violate clearly established statutory or constitutional rights

17

of which a reasonable person would have known.  See Watson v. University of Utah Med Ctr., 75

F.3d 569, 577 (10th Cir. 1996) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The

privilege of qualified immunity protects, not only against liability, but also against suit.  See Mitchell

v. Forsyth, 472 U.S. 511, 526 (1985).  The plaintiff bears the burden of satisfying a strict two-part

test once a defendant invokes a qualified immunity defense.  See Camfield v. City of Oklahoma City,

248 F.3d 1214, 1225 (10th Cir. 2001).  First, the plaintiff must demonstrate that the defendant's

actions violated a constitutional or statutory right.  Second, the plaintiff must show that the

constitutional or statutory rights the defendant allegedly violated were clearly established at the time

of the conduct at issue.  See id. at 1225 - 1226 (quoting Albright v. Rodriguez, 51 F.3d 1531, 1534

(10th Cir.1995)).  Only if the plaintiff meets this two-part test does the Court decide whether the

defendant has met the traditional burdens of showing "that there are no genuine issues of material fact

and that he or she is entitled to judgment as a matter of law."  Nelson v. McMullen, 207 F.3d 1202,

1205 (10th Cir.2000) (quoting Albright, 51 F.3d at 1535).  The burden of this requirement is quite

heavy, for the plaintiff must do more than simply allege the violation of a general legal precept; the

plaintiff must instead demonstrate a substantial correspondence between the conduct in question and

prior law allegedly establishing that the defendant's actions were clearly prohibited.  See Watson v.

University of Utah Med. Ctr., 75 F.3d at 577 (citing Jantz v. Muci, 976 F.2d 623, 627 (10th cir.

1992), cert. denied, 508 U.S. 952 (1993)).  The contours of the right must be sufficiently clear that

a reasonable official would understand that what he was doing violated that right.  See Anderson v.

Creighton, 483 U.S. 635, 640 (1987).

### A.    NO VIOLATION OF A FEDERALLY PROTECTED RIGHT

For the same reasons that the County did not violate a federally protected right, so the

Individual Defendants likewise did not violate such a right. The law does not impose a duty upon government actors to protect citizens against the violent acts of private parties. See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 191 (1989). The Plaintiffs do not satisfy the first prong of their needed showing to defeat the Individual Defendants' claim of qualified immunity.

### B.    NO CLEARLY ESTABLISHED LAW AT TIME OF CONDUCT

The Plaintiffs have failed to direct the Court's attention to any legal authority that mandated the Individual Defendants to destroy Sampson before the attack on Rhodes. Some Tenth Circuit cases have gone so far as to state that, for a law to be clearly established, "'there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains.'" Murrell v. School Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1251 (10th Cir. 1999) (quoting Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992)). Subsequent decisions, however, have held that, for a right to be "clearly established," there need not be binding precedent on "all fours" with the current case; instead, the unlawfulness must have been apparent in light of pre-existing precedent. Lybrook v. Members of Farmington Mun. Sch. Bd., 232 F.3d at 1338 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Under any standard, the Plaintiffs have failed to point to any legal authority that would support their position that the Defendants violated clearly established law. The Plaintiffs have cited several statutes and ordinances in their Complaint; however, none charge the Defendants with the obligation of destroying Sampson under these circumstances. The Plaintiffs cite to a New Mexico statute that provides that a peace officer "shall destroy the dog if it is in the act of pursuing or wounding livestock or wounding and killing poultry or attacking humans." NMSA 1978 § 77-1-9

(2003) (emphasis added).  The Plaintiffs have not alleged that either Individual Defendant observed the dog in the act of killing the decedent or wounding any other individual.  Consequently, § 77-1-9 did not obligate either Individual Defendant to kill the animal.  The Court is not aware of any other applicable New Mexico statute or case law that would obligate them to do so.[5]

The Plaintiffs also cite to the Taos County Animal Control Ordinance, but do not allege that the ordinance requires that an animal be destroyed after it bites a person.  The Plaintiffs cite specifically to Article 5-4 of the ordinance, which states that, "[a]fter a judicial determination that an animal is dangerous, the court having jurisdiction over the enforcement of this Ordinance, upon hearing of such complaint, may . . . order the Animal Control Officer to have such animal destroyed . . . ."  No party has taken the position that any judicial order was directed to either of the Individual Defendants.  The Plaintiffs merely allege that Judge Chavez of the Taos County Municipal Court had ordered that Sampson be killed following instances of attacking and biting humans.  See Amended Complaint ¶ 30, at 4.  During the briefing, the Plaintiffs actually submitted an affidavit asserting that Judge Chavez had ordered the dog's previous owner, Phil Brody, to destroy the dog.  See Affidavit of Juan Madrid ¶ 8 at 1.  It is thus undisputed that the order was not directed to any of the Defendants.

The Animal Control Ordinance does not impose a clear duty upon the Individual Defendants to issue citations or to investigate.  Perhaps it is true that, if the Individual Defendants had done a more proper job and had issued citations, there would have been a judicial determination that would

---

[5]The Plaintiffs, at oral argument, also cite Perkins v. Drury, 57 N.M. 269, 258 P.2d 379 (1953), which they asserted imposed a duty upon the Defendants to destroy Sampson before the attack on Rhodes.  See Transcript of Hearing, at 25.  This case, however, involved an action against an individual dog owner and cannot be read to as imposing a mandatory duty upon the Individual Defendants to destroy Sampson before the attack on Rhodes.

have obligated the Individual Defendants to destroy the dog.   These are discretionary acts, however, and the Individual Defendants were not clearly obligated to do these things.   Accordingly, the Court finds that the Individual Defendants are entitled to qualified immunity with respect to the § 1983 claims against them.

## IV.   THE PLAINTIFFS HAVE NOT RAISED A GENUINE ISSUE OF MATERIAL FACT WITH RESPECT TO THE ELEMENTS OF THEIR SUPERVISORY LIABILITY CLAIM UNDER 42 U.S.C. § 1983 AGAINST MARTINEZ.

As already noted, the Supreme Court has held that there can be no vicarious liability against a municipality or its officials under §1983 solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.   See Monell v. New York City Dept. of Social Services, 436 U.S. at 691.   To establish liability against a municipality or an alleged policy maker, the plaintiff must allege that the municipality's or the policy-maker's own conduct was the moving force behind the alleged injury.   See Board of County Commissioners of Bryan County, Okla. v. Brown, 520 U.S. at 403.   The Plaintiff must also demonstrate culpability that is not solely deliberate indifference, but conduct that shocks the conscience.   See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998); Currier v. Doran, 242 F.3d 905, 918 (10th Cir. 2001).

As already discussed, there is no genuine issue of material fact with respect to any constitutional violation on the part of any Defendant.   In the absence of such a violation, Martinez cannot be liable in his supervisory capacity.   Nonetheless, the Plaintiffs have sued Martinez on a theory of inadequate supervision of subordinate employees, namely Salazar.   Based on those facts shown, the Plaintiffs have not established a direct causal link between Martinez' purported conduct and the Plaintiffs' purported damages.   Nor have the Plaintiffs shown the requisite degree of culpability.   The Plaintiffs have shown that Salazar responded to the complaint regarding the attack

on Christopher Madrid on November 19, 1999, the same day that he was hired as an Animal Control Officer.  See Complaint ¶¶ 25, 27, at 3 - 4.  It can hardly be said that Martinez demonstrated the requisite degree of culpability solely because Salazar had not been fully trained by the time of his very first day on the job.  At most, the Plaintiffs have established only that the supervisor was negligent in not observing what he should have seen. The Supreme Court has made it clear that liability under § 1983 must be predicated upon a "deliberate" deprivation of constitutional rights by the defendant. See, e.g., City of Canton v. Harris, 489 U.S. 378, 389 (1989); Daniels v. Williams, 474 U.S. 327, 331 (1986).  Liability cannot be predicated upon negligence.  See, e.g., Daniels v. Williams, 474 U.S. at 330; Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir.1990).

The Plaintiffs have presented no evidence that shows anything more than possible negligence. Accordingly, the Court will grant summary judgment on the Plaintiffs' claims under §1983 against Martinez for alleged inadequate supervision and training.

## IV.   THE COURT DECLINES TO EXERCISE JURISDICTION OVER ANY OF THE REMAINING STATE LAW CLAIMS.

By dismissing all the federal law claims, the Court has eliminated the basis for removal jurisdiction.  The Court declines to exercise its jurisdiction over the remaining state law claims.  See Dahn v. U.S., 127 F.3d 1249, 1255 (10th Cir. 1997).  The Honorable Lorenzo Garcia, United States Magistrate, stayed discovery pending the ruling on this motion to dismiss.  Hence, no or minimal burden has resulted to the parties with this case pending in federal court.  The state court is well, if not better, equipped to determine the state law claims that the Plaintiffs' Amended Complaint raises. The Court finds that a remand is especially appropriate in this case given that the Plaintiffs are attempting to raise a claim under the New Mexico Constitution.  See Amended Complaint ¶¶ 57 - 61,

at 7 - 8.  Under the circumstances, the Court finds that an order remanding this matter to state court best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.  See Carnegie-Mellon University v. Cohill, 484 U.S. 343, 357 (1988).  Thus, this Court remands this matter to state court for further proceedings on the remaining claims.

**IT IS THEREFORE ORDERED**, that the Plaintiffs' federal civil rights claims against all Defendants are hereby dismissed with prejudice.  The Plaintiffs' request to amend their complaint is denied.  This matter is remanded to state court for further proceedings on the state constitutional claim and the potential New Mexico Tort Claims Act claim.

_____
United States District Judge

**Counsel**:

D. Todd Lazar
Taos, New Mexico

*Attorney for Plaintiffs*

Slease & Martinez, P.A.
Jonlyn M. Martinez
Albuquerque, New Mexico

*Attorneys for Defendants*